BAILES, Judge.
This is a suit brought by the Leaman Corporation, plaintiff-appellant, a shareholder in a corporation named Morrison Convalescent and Nursing Homes, Inc., against Dr. Benjamin O. Morrison, defendant-appellee, the executive vice-president of the above named nursing homes corporation. The object of this suit is to recover the statutory penalty of $50.00 per day from fifteen days after request for certain hereinafter listed corporate information until such information is furnished to plaintiff shareholder. The letter request of the plaintiff to the defendant for such information was dated July 5, 1969, and on the date of the trial, January 20, 1971, the requested information had not been furnished, and in fact, this court was advised by both parties that to this date the information has not been furnished by "defendant. A calculation shows that, as of the date of trial, a total of 549 penalty days had accrued, and the sum of $27,450.00 was then due in penalty under the statute.
We were further advised by counsel for both parties in argument before this court that a similar request for such corporate information had been made on both the *692 president and secretary of the corporation, neither of whom have complied. We were informed that suits identical to the instant one have been filed against those corporate officers and are awaiting trial. A like sum of penalty is involved in each of those suits.
The corporate information requested and which, under the provisions of the statute, quoted infra, the defendant was required to furnish to plaintiff, is the following:
1. The post office address of its registered office;
2. The name and post office address of each registered agent;
3. The names and post office addresses of all its directors and officers, and when the term of each expires;
4. The number of issued shares of each class of its authorized capital stock; and
5. A condensed balance sheet showing, among other things, the amount of its stated capital, capital surplus, and earned surplus.
This action is based on the failure of defendant to supply to the plaintiff shareholder the above listed corporate information. A corporate shareholder is entitled to this information under the provisions of LSA-R.S. 12:102, and the levy and assessment of the penalty for failure to furnish such information is provided for by LSA-R.S. 12:172, subd. B.
We quote these sections:
LSA-R.S. 12:102:
“A. On or before the last day of April in each year, or on or before the last day of the fourth month following the close of the fiscal year of the corporation if such fiscal year ends on a date other than December 31, the president, treasurer or other proper officer, or any two directors, of each corporation shall make and sign in its name a report to the Secretary of State, stating:
“(1) The post office address of its registered office;
(2) The name and post office address of each registered agent;
(3) The names and post office addresses of all of its directors and officers, and when the term of each expires;
(4) The number of issued shares of each class of its authorized capital stock.
“B. Every corporation, and every foreign corporation doing business in this state, shall once in every calendar year, upon the written request of any shareholder of record, deliver to the shareholder, or send to him by mail addressed to this last known address, a report signed by the president or vice-president and secretary or assistant secretary, containing the information hereinabove required to be contained in the last annual report of the corporation preceding said request, together with a condensed balance sheet (showing inter alia and separately the amounts of its stated capital, capital surplus and earned surplus) as of the last day of, and a combined statement of income and earned surplus for, the last preceding fiscal year ended more than four months before receipt of such request.”
LSA-R.S. 12:172, subd. B:
“B. If any officer of a corporation neglects or refuses to mail or deliver to any shareholder, within fifteen days after receipt of a written request by the shareholder therefor, the report prescribed in R.S. 12:102(B), he shall be under a penalty of fifty dollars, recoverable by the shareholder, for every day such officer neglects or refuses to mail or deliver the report thereafter.”
After trial in the district court, judgment was rendered in favor of plaintiff awarding it $50.00 per day for twenty days, or the sum of $1,000.00, and costs. It is from this judgment that the plaintiff appeals, seeking an increase in quantum of penalty. De *693 fendant has answered the appeal, contending plaintiff is not entitled to any award and urging reversal of the judgment.
The corporation known as Morrison Convalescent and Nursing Homes, Inc. was organized for the purpose of building and operating nursing homes to care for the aged and infirm. Considerable stock in the corporation was sold to various individuals, principally friends of the defendant. Early in the promotional efforts of the defendant and his close associates, a block of 155 shares of stock was sold to a Mr. Hans Leutkemeier. According to the record before us, Mr. Leutkemeier paid $10,000.00 in cash which entitled him to a stock certificate for 50 shares. The balance of the stock was to be paid for with funds to be derived from commissions earned from the sale to the corporation of certain required furnishings for the hospital. Mr. Leut-kemeier was elected to the board of directors and the portion of the minutes of the corporate meetings available to us in the record reflects that he attended all meetings, with one exception. It appears he is still a member of the board of directors.
Not long after acquiring his certificate for 50 shares of stock, Mr. Leutkemeier pledged 25 shares to the plaintiff, a corporation wholly owned by Mr. Paul L. Lea-man, to secure a loan of money from the plaintiff. Mr. Leaman testified his corporation acquired the 25 shares as a result of this pledge. Mr. Leutkemeier and Mr. Lea-man are close business associates and friends.
While considerable amounts of cash money was realized from the sale of stock, much of the outstanding stock had been issued in payment of organizational services rendered to the corporation. The stock held by defendant, with the exception of 12i/¿ shares acquired in 1968 for the price of $2,500.00, was acquired in this manner. The fact was known to the stockholders. Certainly, Mr. Hans Leutkemeier had knowledge of this fact.
As early as the annual stockholders meeting in June, 1967, which meeting was attended by Mr. Paul L. Leaman as proxy for Mr. Hans Leutkemeier, it was apparent that the corporation was in financial difficulty and that a great deal of its funds had been spent or were being spent in trying to obtain financing for its proposed facility. In December, 1967 there was in circulation an unaudited financial statement which showed the corporation had incurred a sizeable deficit.
At the 1968 annual stockholders meeting, a complete financial report was promised to the stockholders. The stockholders were told that the audited statement would be in their hands by October of that year. At the trial, the certified public accountant, who was to make the audit and report, testified that he made no audit for the reason that he was not paid his fee in advance, as he would require. The $5,000.00 fee was not paid because there were no funds available from which it could be paid.
From the testimony of the secretary of the corporation given at the trial of this case, it appears certain that the corporation was, even for many months prior to July 5, 1969, the date the corporate report was demanded by plaintiff, without any funds whatever. According to his testimony, the only asset he had knowledge of, except for the 5.8 acres of land which was heavily encumbered and involved in a hypothecation with property of another corporation, was a debt of $4,800.00 owed by Morrison Extended Care Hospital, which corporation had been taken over by its creditors under a reorganizational plan.
In order for the defendant to have complied with the demand of the plaintiff for the corporate report, a financial audit would have been required and it would have required him to expend his own personal funds to pay for an audit and report. The accountant for the corporation testified that the audit of the corporation in 1968 would have cost $5,000.00. The financial statement from which the demanded corpo *694 rate report could have been supplied by the defendant to the plaintiff was non-existent and was unavailable on July 5, ,1969, or at any subsequent time.
The perusal of the record which we have made convinces us that the plaintiff has sustained a loss as a result of the acquisition of its stock. We are equally convinced that plaintiff sustained this loss at a time considerably prior to July 5, 1969, the date it demanded the corporate report of the defendant. And, finally, we are convinced that this is not the proper procedure by which or through which a shareholder in a defunct corporation can recoup a financial loss.
The pronouncement of the court in the case of Smith v. Chauvin, La.App., 212 So. 2d 498 (1968) is apropos to the facts of this case. Therein the court stated on page 499:
“It is obvious that LSA-R.S. 12:39 is a penal statute and has been so recognized by the Supreme Court in Tichenor v. Tichenor, 190 La. 78, 181 So. 863. The Court stated that the statute ‘must be strictly construed and every doubt must be resolved against the imposition of the penalty.’ The Court found that the intent and purpose of the statute ‘was primarily to protect the investing public and necessarily the penalty is incidental to the primary object’, and that it was not the intention of the lawmakers to penalize an officer acting in good faith.
“The evidence convinces us that neither the plaintiff nor the investing public suffered any loss as a result of any act of the defendant or of any failure to act; that corporate insolvency had occurred long before plaintiff made demand for a corporate statement; and that no corporate statement nor any act of the defendant could have helped plaintiff to avoid the loss suffered by corporate insolvency. * * * ”
The mere furnishing plaintiff with the report, which without any doubt, as an officer of the corporation, defendant was obliged to furnish under the provisions of LSA-R.S. 12:102 and 12:172, subd. B, would not have prevented whatever loss plaintiff has incurred through ownership of the stock in the involved corporation. Whatever the loss was it had occurred prior to the date of the request for the report. While the statute requires the named officers to furnish the report, certainly it is within the contemplation of the law that such report be available or reasonably obtainable, or its nonavailability be attributable to some cause of neglect, refusal or bad faith on the part of the officer on whom the demand was made for the report. Herein the corporation had no funds with which the report could have been acquired or obtained.
Accordingly, the judgment of the district court is reversed and set aside, and there is judgment herein in favor of defendant and against the plaintiff rejecting its demands at its costs, in both counts.
Reversed.